UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/800,208 | 08/12/2024 | Justin Paul Stark | 001-001-001-003 | 3327 |

152723 7590 09/30/2026

Justin Paul Stark
12306 DOE MEADOW DR
STAFFORD, TX 77477-2294

| EXAMINER |
|---|
| HUSON, MONICA ANNE |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1742 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/30/2026 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

uspto952@algoclaw.com

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

In re Application of :
Stark et al. :
Application No. 18/800,208 : DECISION ON PETITION
Filed: 12 Aug 2024 :
For: SYSTEMS AND METHODS FOR :
FILLING CONTAINERS WITH LINERS :

This is a decision on the petition filed on June 4, 2026, pursuant to 37 CFR 1.181, requesting supervisory review and reconsideration of the decision issued on June 3, 2026, by the Director of Technology Center 1700 (hereinafter "Technology Center Director"), which decision dismissed the petition filed on April 22, 2026, requesting that the restriction requirement made final in the Office action issued on April 21, 2026, be withdrawn.

The petition to overturn the decision issued on June 3, 2026, by the Technology Center Director and withdraw the restriction requirement made final in the Office action issued on April 21, 2026, is **DENIED**.

## BACKGROUND

The instant application was filed on August 12, 2024.

A restriction requirement was issued on February 13, 2026, requiring a restriction between: Invention I (claims 1 and 2) drawn to a system, classified in B29C49/48 and Invention II (claims 3 through 20) drawn to a method for filling, classified in B29C49/42808.

A response to the requirement for restriction of February 13, 2026, was filed on March 8, 2026, in which petitioner elected Invention II (claims 3 through 20), with traverse.

A nonfinal Office action was issued on April 21, 2026, in which the restriction requirement was made final and claims 3 through 20 were rejected solely on the ground of nonstatutory double patenting as being unpatentable over claims 7 through 16 and 18 through 20 of U.S. Patent No. 11,806, 915.

A petition under 37 CFR 1.181 was filed on April 22, 2026, requesting that the restriction requirement made final in the Office action issued on April 21, 2026, be withdrawn.

The petition under 37 CFR 1.181 filed on April 22, 2026, was dismissed by the Technology Center Director in a decision issued on June 3, 2026.

The present petition under 37 CFR 1.181 was filed on June 4, 2026, requesting reconsideration of the decision issued on June 3, 2026, and withdrawal of the restriction requirement made final in the Office action issued on April 21, 2026.

## STATUTES AND REGULATIONS

35 U.S.C. § 121 provides that:

> If two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions. If the other invention is made the subject of a divisional application which complies with the requirements of section 120 it shall be entitled to the benefit of the filing date of the original application. A patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on an application filed as a result of such a requirement, shall not be used as a reference either in the Patent and Trademark Office or in the courts against a divisional application or against the original application or any patent issued on either of them, if the divisional application is filed before the issuance of the patent on the other application. The validity of a patent shall not be questioned for failure of the Director to require the application to be restricted to one invention.

37 CFR 1.141 provides that:

> (a) Two or more independent and distinct inventions may not be claimed in one national application, except that more than one species of an invention, not to exceed a reasonable number, may be specifically claimed in different claims in one national application, provided the application also includes an allowable claim generic to all the claimed species and all the claims to species in excess of one are written in dependent form (§ 1.75 ) or otherwise include all the limitations of the generic claim.
> (b) Where claims to all three categories, product, process of making, and process of use, are included in a national application, a three way requirement for restriction can only be made where the process of making is distinct from the product. If the process of making and the product are not distinct, the process of using may be joined with the claims directed to the product and the process of making the product even though a showing of distinctness between the product and process of using the product can be made.

37 CFR 1.142 provides that:

> (a) If two or more independent and distinct inventions are claimed in a single application, the examiner in an Office action will require the applicant in the reply to that action to elect an invention to which the claims will be restricted, this

> official action being called a requirement for restriction (also known as a requirement for division). Such requirement will normally be made before any action on the merits; however, it may be made at any time before final action.
> (b) Claims to the invention or inventions not elected, if not canceled, are nevertheless withdrawn from further consideration by the examiner by the election, subject however to reinstatement in the event the requirement for restriction is withdrawn or overruled.

37 CFR 1.143 provides that:

> If the applicant disagrees with the requirement for restriction, he may request reconsideration and withdrawal or modification of the requirement, giving the reasons therefor. (See § 1.111). In requesting reconsideration the applicant must indicate a provisional election of one invention for prosecution, which invention shall be the one elected in the event the requirement becomes final.
> The requirement for restriction will be reconsidered on such a request. If the requirement is repeated and made final, the examiner will at the same time act on the claims to the invention elected.

37 CFR 1.144 provides that:

> After a final requirement for restriction, the applicant, in addition to making any reply due on the remainder of the action, may petition the Director to review the requirement. Petition may be deferred until after final action on or allowance of claims to the invention elected, but must be filed not later than appeal. A petition will not be considered if reconsideration of the requirement was not requested (see § 1.181).

37 CFR 1.181(a) provides that:

> Petition may be taken to the Director:
> (1) From any action or requirement of any examiner in the *ex parte* prosecution of an application, or in *ex parte* or *inter partes* prosecution of a reexamination proceeding which is not subject to appeal to the Patent Trial and Appeal Board or to the court;
> (2) In cases in which a statute or the rules specify that the matter is to be determined directly by or reviewed by the Director; and
> (3) To invoke the supervisory authority of the Director in appropriate circumstances. For petitions involving action of the Patent Trial and Appeal Board, see § 41.3 of this title.

**OPINION**

Petitioner argues that while Inventions I and II are distinct, the examiner has failed to establish that the inventions are also independent inventions and therefore, the requirement of 35 U.S.C.

§121, which states that if two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions, has not been met. Further, petitioner asserts that the examiner attempts to assert, without factual support, a finding of independence by appending the word to a finding of distinctness. Petitioner also argues that the restriction requirement relies on an unlawful disjunctive standard that exceeds the USPTO's statutory jurisdiction and that the USPTO's rationale provided in the *Manual of Patent Examining Procedure* (MPEP) § 802.01 relies on an historical interpretation that is inconsistent with the plain language of the statutory and regulatory text and drafting record of the statute.

Petitioner's arguments that the restriction requirement made final in the Office action of April 21, 2026, lacks a finding that the identified inventions are independent and distinct are not persuasive.

Petitioner's contentions are addressed in MPEP § 802.01, which provides a lengthy explanation of the Office's long-standing interpretation of the "independent and distinct" standard of 35 U.S.C. § 121.

Specifically, MPEP § 802.01 provides that:

> 35 U.S.C. 121 quoted in the preceding section states that the Director may require restriction if two or more "independent and distinct" inventions are claimed in one application. In 37 CFR 1.141, the statement is made that two or more "independent and distinct inventions" may not be claimed in the one application.
>
> This raises the question of the inventions as between which the Director may require restriction. This, in turn, depends on the construction of the express "independent and distinct" inventions.
>
> "Independent", of course, means not dependent, or unrelated. If "distinct" means the same thing, then its use in the statute and in the rule is redundant. If "distinct" means something different, then the question arises as to what the difference in meaning between these two words may be. The hearings before the committees of Congress considering the codification of the patent laws indicated that 35 U.S.C. 121: "enacts as law existing practice with respect to division, at the same time introducing a number of changes."
>
> The report on the hearings does not mention as a change that is introduced, the inventions between which the Director may properly require division.
>
> The term "independent" as already pointed out, means not dependent, or unrelated. A large number of inventions between which, prior to the 1952 Act, division has been proper, are dependent inventions, such as, for example, combination and a subcombination thereof; as process and apparatus used in the practice of the process; as

> composition and the process in which the composition is used; as process and the product made by such process, etc., If section 121 of the 1952 Act were intended to direct the Director never to approve division between dependent inventions, the word "independent" would clearly have been used alone. If the Director has authority or discretion to restrict independent inventions only, then restriction would be improper as between dependent inventions, e.g., the examples used for purpose of illustration above. Such was clearly not the intent of Congress. Nothing in the language of the statute and nothing in the hearings of the committees indicate any intent to change the substantive law on this subject. On the contrary, joinder of the term "distinct" with the "independent", indicates lack of such intent. The law has long been established that dependent inventions (frequently termed related inventions) such as used for illustration above may be properly divided if they are, in fact, "distinct" inventions, even though dependent.

The Office's restriction practice is not in conflict with applicable laws and rules of practice. There is no hard and fast rule that the term "and" must necessarily be read in the conjunctive sense. The terms "and" and "or" have been interpreted in either the conjunctive or disjunctive sense, depending on context. *See* 1A Sutherland on Statutory Construction § 21:14 (7th ed. 2022) (noting that "[t]here has been [] such laxity in the use of these terms that courts have generally said the words are interchangeable and that one may be substituted for the other, if consistent with legislative intent."); *see also United States v. Fisk*, 70 U.S. 445, 447 (1865) ("In the construction of statutes, it is the duty of the court to ascertain the clear intention of the legislature. In order to do this, courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or'."); *United States v. Moore*, 613 F.2d 1029, 1040 (D.C. Cir. 1979) ("Normally, of course, 'or' is to be accepted for its disjunctive connotation, and not as a word interchangeable with 'and.' But this canon is not inexorable, for sometimes a strict grammatical construction will frustrate legislative intent."). Indeed, on many an occasion, the term "and" has been construed as having a disjunctive meaning. *See, e.g., Slodov v. United States*, 436, U.S.238, 250 (U.S. 1978) (disagreeing that "and" in § 6672 of the Internal Revenue Code is conjunctive because that reading would be inconsistent with the statute's purpose); *Bruce v. First Federal Sav. And Loan Ass 'n of Conroe*, 837 F.2d 712, 713 (5th Cir. 1988) ("We hold that the word 'and' in the antitying provision of 12 U.S.C.A. § 1464(q)(1) should be given a disjunctive rather than a conjunctive meaning."); *Peacock v. Lubbock Compress Co.*, 252 F.3d 892, 893 (5th Cir. 1958) (in declining to adopt a conjunctive construction the term "and" in 28 U.S.C. 209(a), noting that "the word 'and' is not a word with a single meaning, for chameleonlike, it takes its color from its surroundings," and that "Courts have often been compelled to construe 'and' as meaning 'or,'"); *Navy Federal Credit Union v. LTD Financial Services*, 972 F.3d 344, 358 (4th Cir. 2020) ("We see no reason to read *and* here to create a conjunctive dependence where none structurally or logically exists.").

Here, interpreting "and" in the disjunctive sense is consistent with Congressional intent. As noted in the MPEP, the legislative history demonstrates that Congress intended to adopt the current restriction standard when it used the term "independent and distinct" in 35 U.S.C. § 121. *See* MPEP § 802.1 (9th ed., rev. 01.2024, November 2024); *see* H.R. Rep. No, 82-1923, at 7 (1952)

("Section 120 and 121 express in the statute certain matters which exist in the law today but which had not before been written into the statute, and in so doing make some minor changes in the concepts involved."); *see also* 4A Donald S. Chisum, Chisum on Patents § 12.03 (2022) ("[T]he Office would seem to be on sound ground in relying on the overriding intent of Congress essentially to codify the substantive standards for division (now called restriction) while altering some of the procedure problems with division. The necessity to argue that restriction is appropriate where two inventions are distinct though not independent arises only because of the particular definition that the Office gives to the word 'independent.' There is no indication that Congress intended to confine independent to situations where there is no disclosed relationship whatsoever.")

At the time of enactment, the MPEP clearly instructed examiners to require division between independent *or* distinct inventions, while court and agency decisions used the phrase "distinct and independent inventions" to describe the very same practice. See MPEP § 801 (1st ed., rev. 3, May 1952); *see In re Feight*, 181 F.2d 206, 209 (C.C.P.A. 1950) (affirming a requirement for division between a garbage grinder and a grinder housing, characterized as "distinct and independent inventions."); *In re Cornell*, 150 F.2d 702, 703 (C.C.P.A. 1945) (quoting a primary examiner's requirement for division between a combination and subcombination as "distinct and independent inventions"); *Ex parte Stocking*, 1902 Dec. Comm'r Pat. 468 (1902) (upholding an examiner's refusal to enter claims to a method of bookkeeping in an application with claims to specific account-books used in the method because the inventions were "distinct and independent"); *Ex parte Martin*, 1883 Dec, Comm'r Pat. 79 (1883) (upholding a requirement for division between a machine for cutting matches and a tray into which matches are fed, characterized as "distinct and independent inventions"). And subsequent to the passage of the 1952 Patent Act, the Federal Circuit has, in passing, cited to MPEP § 802.01, to explain that "either" independence or distinctiveness suffices for restriction. *Helferich Pat. Licensing, LLC v. New York Times Co.*, 778 F.3d 1293, 1310 (Fed. Cir. 2015).

Consequently, petitioner reads too much into the use of the term "and" in the statute. The Office has a long-established restriction practice which is the intent of the courts and Congress to maintain. For the last 70 years, the Office has consistently interpreted 35 U.S.C. § 121 in this way, permitting restriction between related and distinct inventions. See MPEP § 802.01 (2d ed., rev. 3, June 1957) ("The law has long been established that dependent inventions (frequently termed related inventions)… may be properly divided if they are, in fact, 'distinct' inventions, even though dependent."); MPEP § 803 (2d ed., Nov. 1953) ("(u]nder the statute an application may properly be required to be restricted to one of two or more claimed inventions only if they are independent… or distinct").

The Commissioner's decision in *Ex parte Ladd*, which cites a C.C.P.A. decision on division practice from before the 1952 Act, is consistent with the Office's position that 35 U.S.C. § 121 enacted existing division practice. *Ex parte Ladd*, 163 USPQ 319 (1964) ("It is believed that the proper approach to independent and distinctness of inventions is that a combination on the one hand and a subcombination or element on the other may be independently patentable if the latter

'is clearly capable of use apart from the combination and in other relations and not restricted in its design, operation and capabilities or use therewith.'" (quoting *In re Ferenci*, 83 F.2d 279, 284 (C.C.P.A. 1936)).

In 1975, an Official Gazette notice explained the USPTO's position.[1] The notice specifically stated that "[u]nder the statute an application may properly be required to be restricted to one of two or more claimed inventions only if they are able to support separate patents and they are either independent or distinct. If it is demonstrated that two or more claimed inventions have no disclosed relationship ("independent"), restriction should be required, and it is not necessary to further show that the claimed inventions are distinct. If it is demonstrated that the two or more claimed inventions have a disclosed relationship ("dependent"), then a showing of distinctness is required to substantiate a restriction requirement."

Subsequent to the Office's statements on 35 U.S.C. § 121 in the MPEP, *Ladd*, and the 1975 Official Gazette notice, Congress enacted 35 U.S.C. § 372 as part of the law implementing the Patent Cooperation Treaty. Pub. L. No. 94-131, § 372, 89 Stat. 685, 689 (Nov. 14, 1975). Under 35 U.S.C. § 372 (b)(2), "the Director may cause the question of unity of invention to be reexamined under section 121, within the scope of the requirements of the treaty and the Regulations…." The Office's interpretation of § 121 is informed by the direct reference to this section in § 372(b)(2), which concerns unity of invention under the Patent Cooperation Treaty. Regarding unity of invention, 37 CFR 1.475 states that "an international and a national stage application shall relate to one invention only or to a group of inventions so linked as to form a single general inventive concept ("requirement of unity of invention")…." Because lack of unity may be found between related inventions, it is clear that Congress accepted the USPTO's interpretation of 35 U.S.C. § 121 as permitting restriction between related (i.e., dependent) but distinct inventions when Congress enacted § 372 in 1975.

More recently, Congress had another opportunity to disapprove of the USPTO's consistent and long-standing interpretation of 35 U.S.C. § 121, but decided not to do so. When the Leahy-Smith America Invents Act was passed in 2011, Congress amended 35 U.S.C. § 121, but did not alter the substantive test for when a requirement for restriction is permitted. *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 4(a)(2), 125 Stat. 284, 295 (2011). This further demonstrates Congress's intent to maintain the existing restriction practice relating to independent *or* distinct inventions.

Regarding petitioner's argument based on a statement from the legislative history of 35 U.S.C. § 121 quoted in MPEP § 802.01, the full statement from the legislative history is:

> Section 121 ---- New Section
>
> This section enacts as law existing practice with respect to division, at the same time introducing a number of changes. Division is made discretionary with the Commissioner.

[1] "Restriction Between Inventions," 934 Off. Gaz. Pat & Trademark Office 450 (May 13, 1975).

> The requirements of section 120 are made applicable and neither of the resulting patents can be held invalid over the other merely because of their being divided in several patents. In some cases a divisional application may be filed by the assignee.

S. Rep. No. 82-1979, at 20 (1952). The most reasonable interpretation of the full statement is that existing restriction practice is maintained except for the three specific changes described in the statement. None of the three identified changes suggests that the substantive standard of when division can be required was altered. This full statement from the legislative history is consistent with the Office's position set forth in MPEP § 802.01. *See also* P.J. Federico, *Commentary on the New Patent Act* (West 1954), *reprinted in* 75 J. Pat. & Trademark Off. Soc'y 161, 194-96 (1993) (stating that section 121 made "statutory the power of the Patent Office, but an important change is introduced in that the matter is made discretionary with the Commissioner" without identifying any change in the substantive standard previously used for division practice).

Therefore, the restriction requirement made final in the Office action of April 21, 2026, is in compliance with 35 U.S.C. §121.

## DECISION

For the previously stated reasons, the petition requesting withdrawal of the restriction requirement made final in the Office action of April 21, 2026, is **DENIED**.

This constitutes a final decision on the petition. No further requests for reconsideration will be entertained. Judicial review of this decision may be available upon entry of a final agency action adverse to the petitioner in the instant application (*e.g.*, a final decision by the Patent Trial and Appeal Board). *See* MPEP 1002.02.

Petitioner is reminded that the period to respond to the Office action issued on April 21, 2026, continues to run.

/Stefanos Karmis/

Stefanos Karmis
Deputy Commissioner
for Patents (acting)